Hillsborough
No. 85-326

THE STATE OF NEW HAMPSHIRE

v.

VINCENT ROY CASTLE

October 3, 1986

*Stephen E. Merrill*, attorney general (*Barbara R. Keshen*, attorney, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

KING, C.J. The defendant was tried before a jury on four counts of aggravated felonious sexual assault. In this appeal he challenges the propriety of an *ex parte* conversation between the Trial Court (*Dalianis*, J.) and a juror. We reverse and remand.

At trial, after the court had instructed the jury and adjourned for lunch, one of the jurors asked to speak to the judge. Jury deliberations had not yet begun. The judge held an *ex parte* discussion with the juror off the record concerning the juror's realization that he recognized the victim's father, who had been present in the courtroom, as someone who was employed at his workplace. Concluding that the juror felt no discomfort and would be able to perform his duties, the judge did not excuse him. Two alternate jurors were available at that time but were dismissed after lunch when the jury began deliberating.

When counsel returned from lunch, the judge informed them of the colloquy. Defense counsel asked the court to discharge the juror or conduct a *voir dire* in the presence of counsel. Both requests were denied. The judge then summarized on the record the substance of the conversation with the juror:

> "At the lunch break, . . . one of the jurors in our case[ ] asked to see me. And when he did see me, he told me that he hadn't realized it before today, but suddenly recognized that he knew who the father of [the victim] was inasmuch as both are employed at Sanders. He told me that he recognized the name when he heard it in the trial; and then, when he saw the gentleman sitting with the woman who had that name, he recognized the individual as being someone he knows to work at Sanders.
>
> He told me that he did not know him personally, did not encounter him at work and had no reason to think that his knowledge of the man as tenuous as it is would make any difference in the case. He assured me that he felt no bias. And although I offered him the option if he felt the slightest bit of discomfort, given the fact that both worked for the same company, of leaving the deliberations as we still had our two alternate jurors available, he assured me that he felt no such discomfort and he wished to participate as

he was charged and sworn to do. I therefore did not excuse him."

Defense counsel objected to the court's refusal to *voir dire* the juror on the ground that it violated the defendant's right to a fair trial and due process of law under part I, article 15 of the New Hampshire Constitution. By motion for a new trial, the defendant additionally asserted that he was denied his rights to a fair trial and to confrontation as guaranteed by the sixth and fourteenth amendments to the United States Constitution. We proceed by considering the defendant's rights under State law, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), relying on authority from other jurisdictions solely as a guide to our analysis of the State claim. *See Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983). Thereafter, we will address federal constitutional issues only insofar as federal law would provide greater protection. *Ball, supra* at 232, 471 A.2d at 351.

In asserting that he has been denied a fair trial, the defendant does not contend that the juror who approached the judge was in fact biased. Therefore, the right of trial by an impartial jury secured by part I, article 35 of the New Hampshire Constitution, *see State v. Sawtelle*, 66 N.H. 488, 32 A. 831 (1891), is not directly implicated in this case. Our inquiry focuses instead on the procedural protections necessary to ensure the impartiality of jurors. In this regard, the defendant maintains that the court's *ex parte* communication and subsequent refusal to conduct a *voir dire* prevented him from obtaining the information necessary to determine whether the juror was able to be impartial. He characterizes this error as a violation of his right to be present at all stages of trial.

The defendant's right to be present at trial derives from the specific rights to produce all favorable proofs, confront witnesses, and be fully heard in one's defense, N.H. CONST. pt. I, art. 15; *see State v. Lister*, 119 N.H. 713, 716, 406 A.2d 967, 969 (1979), as well as the right to due process, *see Snyder v. Massachusetts*, 291 U.S. 97, 105–06 (1934), guaranteed by part I, article 15 of the State Constitution, *Opinion of the Justices*, 66 N.H. 629, 633, 33 A. 1076, 1078 (1891). Even where a defendant is not confronting witnesses or evidence against him, the due process clause guarantees the right to be present "whenever [the defendant's] presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Snyder, supra,* at 105–06. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence . . . ." *Id.* at 107–08. *See also United States v. Gagnon*, 105 S. Ct. 1482, 1484 (1985).

Therefore, in order to determine whether the defendant was denied due process, we must consider whether his presence at the discussion between the judge and the juror was reasonably required in order to ensure that the jury was impartial. *State v. Bailey*, 127 N.H. 416, 421, 503 A.2d 762, 766 (1985).

*State v. Bailey* is central to our analysis of the defendant's claim that he had a right to be present at the *ex parte* discussion. *Bailey* involved New Hampshire's customary *voir dire* procedure in which the trial court poses questions to the *venire* panel as a group and, where necessary, holds individual discussions with panelists at the bench. Defense counsel requested that the individual discussions be held on the record with counsel present. The court denied the request and instead conducted the discussions off the record, subsequently informing counsel of the substance of each panelist's comments. The defendant challenged this practice under part I, article 15 of the State Constitution. We held that considerations of promoting candor and minimizing awkwardness justified the practice of excluding both the defendant and defense counsel from individual discussions between the judge and jurors during the course of *voir dire*. 127 N.H. at 421, 503 A.2d at 767.

Nonetheless, we recognized in *Bailey* that this procedure had the potential to interfere with the defendant's ability to conduct his defense. *Bailey, supra* at 421, 503 A.2d at 767. "Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury." *Dennis v. United States*, 339 U.S. 162, 171–72 (1950). When a defendant, or defense counsel alone, is present during an inquiry into possible juror bias, there is an opportunity to suggest *voir dire* questions. In addition, on the basis of the juror's statements to the judge, the defendant can request that the juror be instructed to avoid compromising the impartiality of other jurors, argue for replacement of the juror by an alternate, or move for a mistrial.

By contrast, when *ex parte* discussions are held off the record, the defendant is deprived of access to the information needed to effectively exercise his right to challenge a juror. Accordingly, we stated in *Bailey* that a defendant has an absolute right, upon request, to a record of every statement made in the course of criminal proceedings. 127 N.H. at 421, 503 A.2d at 767. In that way, the defendant is not denied the opportunity to be heard in his defense and the defendant's right to trial by an impartial jury is safeguarded. A verbatim record also permits appellate review of the *voir dire* process if the defendant later challenges the trial court's decision not to excuse a juror. *Bailey supra. See also State v. Laaman*, 114 N.H.

794, 800, 331 A.2d 354, 358 (1974), *cert. denied,* 423 U.S. 854 (1975) (supreme court must evaluate juror's *voir dire* testimony to determine propriety of trial court's finding of impartiality).

In the present case, the defendant had no opportunity to request that a record be made of the initial discussion. Therefore, the absence of a prior request does not preclude him from assigning error to the judge's private conversation. The court ought to have notified counsel before speaking with the juror or arranged for a stenographer to record the discussion.

■ Although the *ex parte* contact was improper, from the moment that the court realized that a serious issue might be involved, the error would have been of no constitutional significance had the court subsequently taken adequate steps to protect the defendant's rights. We disagree with the State's contention that placing the court's account of the conversation on the record was sufficient procedural protection. The risk in requiring the defendant to rely on the judge's recapitulation is that even a careful and thorough account "may fail to carry the flavor of the panelist's comment[s]." *Bailey, supra* at 421, 503 A.2d at 767. We conclude that the type of record made by the court denied the defendant the opportunity to effectively exercise his right to challenge the juror.

In addition, we note that the court refused defense counsel's request for a *voir dire.* The record indicates a delay of a few hours between the time the court notified counsel of the conversation and the time this request was made, when deliberations had begun and the alternate jurors had been excused. Nonetheless, the court stated that the *voir dire* request would have been denied even if made earlier. We believe this decision was incorrect.

■■ The trial court exercises its discretion in responding to allegations of juror prejudice. *State v. Pugliese,* 122 N.H. 1141, 1147, 455 A.2d 1018, 1022 (1982). In this case, the judge and juror might have reenacted the earlier colloquy for counsel. Or the court might have decided that a hearing on the record, with or without the defendant or counsel present, was appropriate. *Cf. United States v. Aiello,* 771 F.2d 621, 629–30 (2d Cir. 1985). The refusal to take any steps to create a full record was an abuse of discretion.

■ The question then remains, whether the State has proved beyond a reasonable doubt that the court's error was harmless. *See Bailey,* 127 N.H. at 421, 503 A.2d at 767. There being no record basis upon which the State can rely to determine whether it was error not to allow *voir dire* of the juror, the State, under these cir-

cumstances, cannot sustain its burden, and, therefore, we reverse and remand.

Given our finding of reversible error on the above issue, we will not address the defendant's further contentions relative to that issue.

*Reversed and remanded.*

All concurred.