# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0399, <u>State of New Hampshire v. Brian K. Perry</u>, the court on September 16, 2020, issued the following order:**

Having considered the parties' briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, Brian K. Perry, appeals his convictions, following a jury trial in Superior Court (<u>Bornstein</u>, J.), on two counts of operating a vehicle after having been certified as an habitual offender. <u>See</u> RSA 262:23 (Supp. 2019). We affirm.

The jury could have found the following facts. In June 2017, the defendant was certified as an habitual offender and, as such, was barred from driving a motor vehicle. The defendant knew of his status. In the afternoon of June 3, a Berlin police officer, who is familiar with the defendant and with his girlfriend, saw the defendant drive a bright orange "Chevy Aveo" owned by the defendant's girlfriend. The defendant drove the vehicle in one direction while the officer drove in the other direction. The officer looked right at the defendant and testified that there was "no question in his mind" that the defendant was driving. The defendant was wearing a mesh baseball cap, which the officer had observed him wear on more than one occasion. The officer knew that the defendant was certified as an habitual offender and that he was, therefore, not authorized to drive. Accordingly, the officer called the Berlin police department and relayed the information about the defendant driving.

At around midnight on June 9, the officer again encountered the vehicle owned by the defendant's girlfriend. This time, he saw the vehicle traveling west on Green Street in Berlin. Although the officer could not see the face of the driver, he believed that the driver was the defendant because he is familiar with the defendant and because the driver wore the mesh baseball cap that the officer had observed the defendant wear previously.

The officer saw the vehicle turn into the parking lot of a local convenience store. By the time the officer arrived on the scene, the vehicle was no longer running, its lights were off, and the vehicle was empty. A passerby told the officer that the vehicle's driver had walked up Hillside Avenue. The officer placed a "boot" on the vehicle and began searching for the defendant, but was unsuccessful.

The next morning, the officer drove to the defendant's home and saw the orange Chevy Aveo parked in the home's driveway. The officer spoke with the defendant's girlfriend, who advised that the defendant was not home, and that she had driven the vehicle the previous night. When asked if she had worn a hat while driving, the defendant's girlfriend said that she "had a hood on." The officer obtained a warrant for the defendant's arrest, which the officer executed in July 2018.

On appeal, the defendant first argues that the trial court erred when it overruled his objection to the prosecutor's closing argument. The arresting officer testified that he initiated a call for services related to his pursuit of the vehicle "just before midnight" on June 9, 2017. When asked whether he verified to whom the vehicle belonged, the officer was shown "a call log for that night," and, after his recollection was refreshed, testified that the vehicle's owner was the defendant's girlfriend and was the same vehicle he had seen the defendant drive on June 3.

In his closing argument, the prosecutor stated that the jury could "verify" the arresting officer's testimony regarding the events of June 9 and June 10, by "go[ing] to the call log." The prosecutor told the jury that the arresting officer testified, "after referencing his report and the call log[,] [t]hat at 2358, which is 11:58 p.m., on June 9th, he saw the suspicious vehicle." Defense counsel objected that the prosecutor was "reading verbatim from the dispatch log," which had not been entered into evidence. The prosecutor countered that he was merely "summarizing testimony." The trial court overruled the defendant's objection.

The defendant contends that "the prosecutor improperly bolstered the testimony of a police officer by referencing a document that was not admitted into evidence." He argues that the prosecutor's improper closing argument requires reversal of his conviction.

Under New Hampshire law, "[a] prosecutor has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge the jury to draw inferences of guilt from the evidence." State v. Addison, 165 N.H. 381, 547 (2013) (quotation omitted). In deciding whether a prosecutor's closing argument requires reversal, we first determine whether the challenged remarks amounted to improper advocacy. Id. To assess whether the State advanced an improper argument, we consider the challenged remarks in the context of the case. Id. at 548. We must be mindful that "[a]lthough prosecutors may present their cases zealously, this latitude has its limits." Id. "Ultimately, determining the propriety of a prosecutor's comments involves balancing a prosecutor's broad license to fashion argument with the need to ensure that a defendant's rights are not compromised in the process." Id. (quotation omitted).

If we conclude that the prosecutor's argument amounted to improper advocacy, we then determine whether the error requires reversal of the verdict. Id. at 547. Making that determination entails balancing: (1) whether the prosecutor's misconduct was isolated or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether any prejudice surviving the court's instruction likely could have affected the outcome of the case. Id. at 547-48. We will not overturn a trial court's ruling as to whether improper prosecutorial remarks warrant a mistrial or other remedial action absent an unsustainable exercise of discretion. Id. at 549.

The defendant likens this case to State v. Lake, 125 N.H. 820 (1984). In that case, defense counsel argued that the arresting officer "exaggerated his observations to secure a conviction against the defendant" and that "when it came to recollecting evidence that might be favorable to the defendant, . . . the officer's memory became 'fuzzy.'" Lake, 125 N.H. at 821. To counter that argument, the prosecutor stated in his closing argument that the officer's recollection of the evidence was "very precise because he reread his report before testifying." Id. at 822 (quotation and ellipsis omitted). We observed that, in fact, "no police report was mentioned during trial," and held that the prosecutor's comment was not a reasonable inference that could be drawn from the facts proved. Id.

In the instant case, by contrast, the arresting officer had been shown the call log during his testimony to refresh his recollection. Although the log was not itself entered into evidence, the jury was aware that it existed and that it was used to refresh the officer's recollection. Moreover, even if we assume that the prosecutor's comment was improper, it was isolated and there is no evidence that it was deliberately made. Under these circumstances, we conclude that the prosecutor's comment, even if improper, does not require reversal of the defendant's convictions.

The defendant next asserts that the trial court erred when it admitted a certified record of his girlfriend's convictions for theft by deception into evidence only for impeachment purposes. Before trial, once notified that the defendant intended to call his girlfriend as a witness, the State moved in limine under New Hampshire Rule of Evidence 609(a)(2) to admit into evidence for impeachment purposes only her two March 2019 convictions for theft by deception. The defendant did not object to the motion, and the trial court granted it.

On the first day of trial, the trial court discussed the motion with counsel:

> THE COURT: Before I adjourn to do that, the State had also
> filed a motion to impeach a witness with a prior criminal
> conviction. Will the Defense be objecting to that if the

3

Defense calls this witness?

[DEFENSE COUNSEL]: I don't believe so. Of course, the copy looks like a certified copy. If the Court is satisfied this is a certified copy of the conviction, I don't see any basis to be able to object, so.

When the prosecutor confirmed that the exhibit constituted a certified copy of the convictions, defense counsel stated that he did not "have any reason to believe" that the exhibit was not the official record and that he did not anticipate objecting to it.

The prosecutor subsequently questioned the defendant's girlfriend about the convictions, without objection by the defendant. When the prosecutor sought to enter the certified record of the convictions into evidence as a full exhibit, defense counsel objected, stating that he did not realize that the exhibit would be entered as a full exhibit. The trial court ruled that the exhibit was admissible for impeachment purposes only. Accordingly, the court instructed the jury before the defendant's girlfriend left the witness stand that the evidence of her convictions "for theft by deception . . . has been admitted solely for the purposes of attacking [her] credibility" and "may not be considered by you[ ] for any other purpose." The court reiterated this instruction when it gave the jury its final instructions, stating: "Now, evidence has been introduced that [the defendant's girlfriend] has previously been convicted of two crimes. You may use a prior criminal conviction only in deciding whether you believe a witness's testimony. You must not consider the prior convictions for any other purpose."

Rule 609(a)(2) provides that, to "attack[ ] a witness's character for truthfulness by evidence of a criminal conviction" evidence of the conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement." The defendant concedes that the convictions for theft by deception include the requisite element of a dishonest act or false statement. He also concedes that Rule 609(a)(2) "permitted the prosecutor to use the prior convictions to impeach [the defendant's girlfriend]." Further, although the defendant maintains that the certified record of his girlfriend's convictions was admitted as "a full exhibit," the trial court twice instructed the jury that it could use the evidence of those convictions for impeachment purposes only. Under those circumstances, the exhibit was not entered as a "full exhibit," but was entered with limitations.

The defendant argues that the record of his girlfriend's convictions was inadmissible because she admitted that she had been convicted of the two offenses. He asserts that "[i]n light of this testimony, it was entirely unnecessary for the prosecutor to introduce, as a full exhibit, the eight-page record of these convictions." He contends that when, as in this case, a witness

4

has "fully and unqualifiedly admit[ted] the conviction, including the nature thereof if inquired about, then the record [of the conviction] becomes inadmissible." (Quotation omitted.) The defendant also argues that the trial court erred by allowing the prosecutor to elicit details about the convictions during the defendant's girlfriend's testimony. He asserts that the trial court should have limited the questioning "to the basic facts reflected on the face of the judgment." (Quotation omitted.)

We decline to address the merits of the defendant's appellate arguments because he did not preserve them for our review. As the appealing party, the defendant has the burden of providing this court with a record that demonstrates that he raised his appellate issues before the trial court. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). In the trial court, the defendant did not object when the prosecutor elicited details about the theft by deception convictions from the defendant's girlfriend. Moreover, although he objected to the record of the convictions being entered as a full exhibit, he did not do so on the ground that he now asserts on appeal -- that it was inadmissible because his girlfriend admitted that she had been convicted of the two crimes.

The defendant next asserts that the trial court erred by allowing the State to cross-examine his girlfriend about her car's owner's manual. The defendant's girlfriend testified that it was she, and not the defendant, who drove the vehicle on June 9, 2017. She testified that at some point during the drive, her vehicle began to overheat. She testified that she believed that it was overheating because the temperature gauge "was in the red." The prosecutor asked her whether she had ever read the owner's manual for her vehicle, to which she responded that she had not. Defense counsel objected on relevance grounds. The prosecutor explained, "Well, it's relevant because [the defendant's girlfriend] . . . claims that her vehicle overheated. I think at this point, I [may] . . . inquire as to how exactly she came to that determination." The prosecutor further explained that, according to the owner's manual, when the temperature gauge is in the red zone, the vehicle is not overheating. The trial court overruled the objection and allowed the questioning.

The defendant argues that in so doing, the trial court unsustainably exercised its discretion. He asserts that "[w]hat mattered was whether [his girlfriend] believed that her car was overheating," and that impeaching her testimony by referencing the owner's manual was prejudicial because it suggested to the jury that her testimony was not credible.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. "Whether evidence is relevant is a question for the trial court's sound discretion, and we will not overturn its determination absent an unsustainable

5

exercise of discretion." State v. Rice, 169 N.H. 783, 800 (2017) (quotation omitted). "To show an unsustainable exercise of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." Id.

We conclude that the trial court did not unsustainably exercise its discretion by allowing the State to question the defendant's girlfriend about the owner's manual for her vehicle as a mode of impeaching her credibility. Evidence that impeaches a witness's credibility is relevant as a matter of law. State v. Woolverton, 159 P.3d 985, 990 (Kan. 2007).

Finally, the defendant argues that the evidence was insufficient to convict him of the charge alleging that he drove on June 9, 2017. When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State. State v. Saintil-Brown, 172 N.H. 110, 117 (2019). The trier of fact may draw reasonable inferences from facts proved as well as from facts found as the result of other inferences, provided they can be reasonably drawn therefrom. Id.

We examine each evidentiary item in the context of all the evidence, and not in isolation. Id. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. Id. Because, in this case, the defendant chose to present a case, we review the entire trial record to determine the sufficiency of the evidence. Id.

The defendant has the burden of demonstrating that the evidence was insufficient to prove guilt. Id. When the evidence as to one or more elements of the charged offense is solely circumstantial, a defendant challenging sufficiency must establish that the evidence does not exclude all reasonable conclusions except guilt. Id. The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded. Id. Even when the evidence as to one or more elements is solely circumstantial, we still consider it in the light most favorable to the State, and we examine each evidentiary item in the context of all of the evidence, not in isolation. Id. at 118.

The defendant concedes that, viewed in the light most favorable to the State, the evidence established that: (1) he and his girlfriend lived together as long-term partners; (2) the defendant drove his girlfriend's car on June 3, 2017, while wearing a mesh baseball hat; (3) someone other than his girlfriend drove her car on June 9 while wearing a mesh baseball hat; (4) the person who drove

6

the vehicle on June 9 resembled him more than his girlfriend; and (5) the defendant's girlfriend falsely claimed that she was the driver on June 9.

The defendant argues that this evidence was insufficient to prove that he drove his girlfriend's vehicle on June 9 because it was "possible" that she permitted a third person to drive her car. However, the proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded. Id. Here, there was no evidence that a third person drove the vehicle on June 9. Even if the evidence was solely circumstantial as to whether the defendant drove the vehicle on June 9, viewed in the light most favorable to the State, we hold that the evidence was sufficient for the jury to find, beyond a reasonable doubt, that it was he.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

7